WO

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Sue Kerton and David Kerton, wife and husband,<br><br>　　　　Plaintiffs,<br><br>v.<br><br>Provident Life and Accident Insurance Co., a foreign corporation licensed to do business in Arizona; UNUM-Provident corporation, a Delaware corporation,<br><br>　　　　Defendants. | CV 05-214 TUC DCB<br><br>**ORDER** |

On October 20, 2004, this Court ruled that Sue Kerton failed to establish that she was totally disabled for a period of 180 days, beginning April 13, 2000, and therefore, Provident Life and Accident Insurance Co. (Provident) was not obligated to pay her benefits under the plain language of her long-term total disability policy. *See Kerton v. Provident*, CV 02-313 TUC DCB (*Kerton I*) (document 65). This Court held that the long-term disability policy was an ERISA policy, that her claim was governed by ERISA, and that her state law claims for breach of contract and bad faith were preempted by ERISA. *See Kerton I,* (Order filed August 26, 2003) (document 39). Further, the Court ruled that the administrative record for the ERISA claim did not include a letter and materials provided to Provident on October 2, 2001, because Provident made its final determination denying Plaintiff's claim on June 28, 2001, and the records submitted on October 2, 2001, were available, and no reason was given why they were not provided to Provident, prior to the final determination. *See Kerton I*, (Order filed June 22, 2004) (document 52).

On February 28, 2005, Plaintiffs filed another claim, *Kerton II,* against Provident in state court. The Complaint alleges that Plaintiff became disabled 180 days prior to October 2, 2001, and that she submitted a "renewed claim" for payment by forwarding additional information supporting her disability to Provident on this date. *See* (Complaint at ¶ IV). Plaintiff alleges that Provident breached its contract of insurance by refusing her "renewed" claim on January 22, 2002. *See* (Complaint at VIII.) Plaintiff alleges that her renewed claim, filed on October 2, 2001, is not governed by ERISA because her employer, Payless Cashway, "ceased to do business prior to October 2, 2001." *See* (Complaint at VI.) Plaintiff alleges common law breach of contract claims and bad faith claims against Provident. Defendants removed the case to federal court on March 23, 2005. *See Kerton v. Provident*, CV 05-214 TUC DCB (*Kerton II*).

Defendants filed a Motion to Dismiss based on judicial estoppel and res judicata or in the alternative ask the Court to rule that ERISA governs *Kerton II*. The Court dismisses *Kerton II* for all the reasons stated in Defendants' Motion to Dismiss (document 21).

**Discussion: Res Judicata**

Plaintiff distinguishes *Kerton II* from *Kerton I* based on her assertion that she became disabled 180 days prior to October 2, 2001, the date she alleges she submitted a "renewed claim" for payment of her insurance benefits. In *Kerton II*, the alleged date of disability is sometime around the first of April, 2001. As compared to *Kerton I*, where she submitted her claim for insurance benefits on October 26, 2000, and her alleged date of disability was 180 days prior, or April 13, 2000.

In *Kerton I*, Provident allegedly breached the coverage provisions of the insurance contract when it denied Plaintiff disability benefits on December 19, 2000; the final decision to deny benefits was made on June 28, 2001. In *Kerton II*, Plaintiff alleges that on January 22, 2002, when Provident returned the October 2, 2001, materials without considering them,

it acted in bad faith and breached its contractual duty to provide disability benefits to the Plaintiff.

Plaintiff's rational is, however, undermined by the facts of the case. On April 19, 2001, Provident sent a letter to Plaintiff, giving her 45 days to provide any additional medical information to support her appeal of Provident's denial of her claim. *Kerton I*, (Order filed October 20, 2004 at 13.) Specifically, Provident asked for more recent medical records and an electrodiagnostic study. *Id.* Plaintiff provided additional materials, which were considered prior to Provident issuing its final decision on June 28, 2001, affirming its December 19, 2000, denial of long-term disability benefits. *Id.* at 13-14. Any new materials generated after June 28, 2001, which may have been transmitted to Provident on October 2, 2001, would not have pertained to whether or not Plaintiff was disabled as of April 2001.

This Court reaffirms its decision to not consider the materials provided to Provident on October 2, 2001, and to limit the scope of review to the administrative record considered by Provident, which included all the materials submitted to Provident from October 26, 2000 to June 28, 2001. *See Kerton I* (Order filed June 22, 2004.) Clearly, the material included in the October 2, 2001, transmittal was evidence that could as easily have been submitted to Provident during the administrative review of Plaintiff's claim, and that is "precisely why it should not and [was] not [] considered by this Court." *See Kerton I*, (Order filed June 22, 2004, at 6 (citing *Kearney v. Standard Insurance Company*, 175 F.3d 1084, 1091 (9th Cir. 1999) (*en banc*)).

According to Plaintiff, *Kerton II* was not possible until this Court's ruling in *Kerton I*, denying Ms. Kerton her long-term disability benefits under the ERISA. (Objection at 2.) Plaintiff argues that when this Court ruled that the materials submitted to Provident on October 2, 2001, were not part of the administrative ERISA claim, the Court cleared the way for Plaintiff to argue that the materials were something else: i.e., a "renewed" claim. Plaintiff argues that on October 2, 2001, there was no longer an ERISA plan because Payless

Cashways was no longer in business, and therefore, Provident's denial of her renewed claim is not governed by ERISA and her common law claims for breach of contract and bad faith brought in *Kerton II* are not preempted by ERISA.

Res judicata, also known as claim preclusion, bars all grounds for recovery which could have been asserted in the prior suit between the parties. Res judicata applies if the earlier suit involved the same "claim" as the later suit; reached a final judgment on the merits, and involved the same parties. *Nordhorn v. Ladish Co.,* 9 F.3d 1402, 1404 (9th Cir. 1993).

Res judicata bars the later action even if the plaintiff couches the second lawsuit in new factual allegations and legal theories. *Costantini v. Trans World Airlines*, 681 F.2d 1199, 1201 (9th Cir. 1982). The doctrine ensures the finality of decisions, conserves judicial resources, and protects litigants from multiple lawsuits. *McClain v. Apodaca*, 793 F.2d 1031, 1032-33 (9th Cir. 1986).

The Court finds that the claim in *Kerton I* and *Kerton II* is the same. First, the rights and interests of the parties established by this Court's prior judgment would be affected by the prosecution of *Kerton II* because Plaintiff challenges the Court's holdings in *Kerton I* as follows: 1) ERISA does not apply to Plaintiff's disability coverage claim, 2) the scope of review is limited to the administrative record, excluding materials submitted to Provident on October 2, 2001, and 3) Plaintiff failed to establish eligibility for long-term disability benefits. Second, the evidence in the two actions is the same: the administrative record and the October 2, 2001 materials. Third, both suits involve infringement of the same right: the alleged breach of the same insurance contract and bad faith. Fourth, the two suits arise from the same transactional nucleus of facts, which are the same insurance policy between the same parties, based on the same medical evidence, and involve the same alleged disability. *See Costantini*, 681 F. 2d at 1201-02 (discussing four criteria to determine whether two claims are the same).

Even if the Court found that *Kerton II* did not involve the same claim, res judicata still bars it because the "renewed" claim predates *Kerton I*. The rule in contract cases is that the first suit must claim every breach that has then occurred, especially when the contract requires a series of performances. Then multiple claims may arise for breach of a single contract by distinct acts at separate times such as when an insurance policy requires monthly payments of benefits. Then all breaches occurring prior to commencement of the first action constitute part of a single claim or cause of action, even though each could have been pursued as a separate claim at the time it arose. *International Union of Operating Engineers-Eployers Constr. Indus. Pension, Welfare, & Training Trust Funds v. Karr*, 994 F.2d 1426, 1429-30 (9th Cir 1993) (citations omitted). Even if Provident's return of the October 2, 2001, materials to Plaintiff on January 22, 2002, was a "new breach" of the policy, it occurred prior to Plaintiff's filing of *Kerton I*: May 30, 2002.

In *Kerton I*, there was full briefing regarding the scope of review and whether this Court should consider evidence outside the administrative record, specifically the October 2, 2001 materials, yet Plaintiff failed to even suggest alternatively that the October 2, 2001, materials might be construed as a "renewed" claim. She is barred by principles of res judicata from making this argument now. She should have brought all of her existing contract claims related to Provident's denial of coverage under the disability policy in *Kerton I*, exercising her right, if she believed it necessary, to amend her complaint and/or plead in the alternative. Fed. R. Civ. P. 8(a).

**Discussion: Collateral Estoppel**

In *Kerton I,* this Court issued a 23 page Order, filed on August 26, 2003, explaining why ERISA governs Plaintiff's claim and preempts her state common law claims of breach of contract and bad faith. There is no need to restate this analysis here. In summary, *Kerton I* explained that ERISA continued to govern Plaintiff's policy after she left her employment because she did not convert her policy into a non-ERISA policy, but continued the same

ERISA-government policy. *Kerton I*, (Order at 15-16.)  The Court rejects Plaintiff's assertion in *Kerton II*, unsupported by any case law, that the timing of her employer's demise is material,[1] and alters the explanation of this Court in *Kerton I* that "once ERISA, always ERISA."  This Court has looked and found no court to have ruled that a plaintiff's policy is removed from ERISA coverage simply because the employer goes out of business.

The cases discussed in *Kerton I*, which find that termination of the employment relationship by an employee does not terminate ERISA coverage apply by analogy to termination of the employment relation due to insolvency.  Therefore, the law discussed in *Kerton I* applies here: "once ERISA always ERISA," even if the policy continues after termination of the employment relationship, unless the policy is converted to an individual policy. *Kerton I*, (Order filed August 26, 2003, at 11-15) (citations omitted); *see also Waks v. Empire Blue Cross/Blue Shield*, 263 F.3d 872, 876-877 (9th Cir. 2001) (discussing *Qualls v. Blue Cross of Calif.*, 22 F.3d 839, 841 (9th Cir. 1994)).  The key factor is whether or not eligibility for the policy was based solely on the insured's previous employment. *Waks,* 263 F.3d at 876 (citing *Qualls*, 22 F.3d at 841).

*Kerton I* unequivocally established that Plaintiff's long-term disability policy, secured due to her employment relationship with Payless-Cashways, was an ERISA policy.

/////

/////

/////

---

[1] Plaintiff's premise appears to be based on the alternative ruling in this Court's *Kerton I* Order that "regardless of whether or not Plaintiff's policy was "continued" or "converted," this Court's review of Provident's denial of Plaintiff's disability benefits is governed by the disability policy as it was on December, 19, 2000 because in the Ninth Circuit, "an ERISA cause of action based on a denial of benefits accrues at the time the benefits are denied." *Grosz-Salomon v. Paul Revere Life Insurance Co.*, 237 F.3d 1154, 1159 (9th Cir. 2001). This Court notes here that the final decision denying benefits was made on June 28, 2001. Payless-Cashway filed for bankruptcy on May 13, 2001. *See Kerton I*, (Order filed August 26, 2003 at 4.) At either point in time, the policy in place was an employee benefit plan governed by ERISA.

6

1 There is no dispute that it was not converted to an individual policy.  As it was "once
2 ERISA," it is "always ERISA."  Neither Plaintiff's termination of her employment nor
3 termination of the employment relationship due to Payless-Cashway's insolvency changes
4 this.

**Accordingly,**

**IT IS ORDERED** that this matter was transferred to this Court by the Honorable John M. Roll on July 29, 2005, granting the Defendants' Motion to Transfer this Case (document 11).

**IT IS ORDERED** that Defendants' Motion to Dismiss Case Based on Judicial Estoppel and Res Judicata (document 21) is GRANTED.

**IT IS FURTHER ORDERED** that the Clerk of this Court shall enter Judgment accordingly.

DATED this 14th day of December, 2005.

David C. Bury
United States District Judge